IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**MUWAKKIL S.B. SHABAZZ,** *et al.,*

     Plaintiffs,

v.                             Civil Action No. **3:10CV638**

**VIRGINIA DEPARTMENT OF CORRECTIONS,** *et al.,*

     Defendants.

### MEMORANDUM OPINION

On September 9, 2010,[1] Plaintiffs, six Virginia inmates who are members of the Nation of Islam ("NOI") proceeding *pro se* and *in forma pauperis*, filed this civil action under 42 U.S.C. § 1983. Plaintiffs, proceeding on their Amended Complaint (Docket No. 49), brought eight separate claims concerning issues at the Greensville Correctional Center ("GCC").

### I. PROCEDURAL HISTORY

On September 9, 2011, by Memorandum Opinion and Order, the Court dismissed all Plaintiffs except Muwakkil S.B. Shabazz. *Shabazz v. Va. Dep't Corr.*, No. 3:10CV638, 2011 WL 4025264, at *5 (E.D. Va. Sept. 9, 2011). The Court held in abeyance the question of whether Shabazz had exhausted his administrative remedies for Claims Two through Eight.[2] *Id.* at *3. The Court further ordered Defendants[3] to file their position regarding the sufficiency of the exhaustion of Shabazz's administrative remedies for Claims Two through Eight. *Id.* at *6.

---

[1] This is the date that the Clerk's office stamped the complaint "RECEIVED." (Compl. 1.)

[2] Defendants have conceded that Claim One was properly exhausted. *Shabazz,* 2011 WL 4025264, at *3.

[3] Defendants consist of more than thirty individuals and entities.

On October 19, 2011, Shabazz moved to withdraw several of his claims. (Docket No. 89.) Shabazz's Motion to Withdraw (Docket No. 89) will be GRANTED. Claims Two, Four, Five, Six, and Seven will be DISMISSED WITHOUT PREJUDICE.

Shabazz is left with the following three claims:

Claim One     Defendants are denying Shabazz's right to purchase recordings of NOI sermons from the vendor of his choice.

Claim Three    Defendants are denying Shabazz a diet consistent with his Islamic dietary tenets as outlined in the book *How To Eat To Live* by Elijah Muhammad.

Claim Eight    Defendants are requiring Shabazz to participate in Ramadan with the Moorish Science Temple Followers.

Defendants have complied with the September 9, 2011 Memorandum Opinion and Order. (Docket No. 88.) The matter is ripe for disposition.

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the responsibility of the party seeking summary judgment to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and

2

admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (*quoting* former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

Additionally, "'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (*quoting Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 & n. 7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only cited materials . . . ."). Therefore, the Court's disposition of the Motion for Summary Judgment is based upon the materials Defendants submitted in support of their Motion for Summary Judgment and the materials Shabazz submitted in opposition to the Motion for Summary Judgment.

In support of their motion for summary judgment, Defendants have submitted two separate affidavits from S. Tapp, the Grievance Coordinator at GCC, along with numerous copies of grievances, both formal and informal, filed by Shabazz. (Mem. Supp. Mot. Summ J. Attach. 1 ("Tapp Aff. I"); Supp'l Mem. Attach. 1 ("Tapp Aff. II").) Shabazz has submitted his sworn complaint, his declaration, and copies of various formal and informal grievance forms.[4]

Of course, the facts offered by affidavit or sworn declaration must also be in the form of admissible evidence. *See* Fed. R. Civ. P. 56(c)(4). In this regard, the statement in the affidavit or sworn declaration "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Id.* Therefore, "summary judgment affidavits cannot be conclusory or based upon hearsay." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996)

---

[4] Citations to Shabazz's submissions will refer to the page numbers given these documents by the Court's CM/ECF system.

(internal citation omitted) (*citing Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 975 (4th Cir.

1990); *Md. Highways Contractors Ass'n v. Maryland,* 933 F.2d 1246, 1252 (4th Cir. 1991)).

Given Claim One's complexity and procedural posture, the Court will address Claim One

subsequent to addressing Defendants' straightforward argument that Shabazz has not properly

exhausted Claims Three and Eight.

## III.  CLAIMS THREE AND EIGHT

### A.      Administrative Exhaustion

The exhaustion requirement demands that "[n]o action shall be brought with respect to

prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in

any jail, prison, or other correctional facility until such administrative remedies as are available

are exhausted."  42 U.S.C. § 1997e(a); *see Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (requiring

complete exhaustion of correctional facility administrative remedies).  Generally, in order to

satisfy the exhaustion requirement, the inmate must file a grievance raising the claim and pursue

the grievance through all available levels of appeal.  *See Woodford*, 548 U.S. at 90.

Additionally, the Supreme Court has instructed that 42 U.S.C. § 1997e(a) "requires proper

exhaustion."  *Id.* at 93.  The Supreme Court explained that "[p]roper exhaustion demands

compliance with an agency's deadlines and other critical procedural rules," *id.* at 90, "'so that the

agency addresses the issues on the merits,'" *id.* (*quoting Pozo v. McCaughtry*, 286 F.3d 1022,

1024 (7th Cir. 2002)).  Thus, the applicable prison rules "define the boundaries of proper

exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

Virginia Department of Corrections Operating Procedure Number § 866.1 "provides an

administrative process for resolving offender issues and complaints through fair, prompt

decisions and actions in response to complaints and grievances from offenders incarcerated in

4

Department of Corrections, Division of Operations facilities." (Va. Dep't Corr. Operating

Procedure ("Operating Procedure") § 866.1.I.)[5] Operating Procedure § 866.1 requires that,

before submitting a formal grievance, the inmate must demonstrate that he or she has made a

good faith effort to resolve the grievance informally through the procedures available at the

institution to secure institutional services or resolve complaints. (Operating Procedure

§ 866.1.V.A.) Generally, this requires an inmate to file an informal complaint form. (*Id.*

§ 866.1.V.A.1.) If the informal resolution effort fails, the inmate must initiate a regular

grievance by filling out a standard form. (*Id.* § 866.1.VI.A.2.)

   "The original *Regular Grievance* (no photocopies or carbon copies) should be submitted

by the offender through the facility mail system to the Facility Unit Head's Office for processing

by the Institutional Ombudsman/Grievance Coordinator." (*Id.* § 866.1.VI.A.2.b.) The offender

must attach to the regular grievance a copy of the informal complaint. (*Id.* § 866.1.VI.A.2.a.)

Additionally, "[i]f 15 calendar days have expired from the date the *Informal Complaint* was

logged without the offender receiving a response, the offender may submit a *Grievance* on the

issue and attach the *Informal Complaint* receipt as documentation of the attempt to resolve the

---

[5] Defendants have submitted an outdated version of Operating Procedure § 866.1. (*See* Mem. Supp. Summ. J. Attach 1.) The current version of Operating Procedure § 866.1 took effect on December 1, 2010, well before the events in question here. Operating Procedure § 866.1, *available at* http://www.vadoc.state.va.us/about/procedures/documents/800/866-1.pdf (last visited Dec. 27, 2011). Applying either version would not materially alter the outcome of this case. Shabazz has not objected to the admissibility of the outdated version. *See* Fed. R. Civ. P. 56(c)(2), 56(e)(2).
   The Court nonetheless takes judicial notice of the current version of Operating Procedure § 866.1. *Perry v. Johnson*, No. 3:10CV630, 2011 WL 3359519, at *3 (E.D. Va. Aug. 3, 2011) (*citing Bowler v. Ray*, No. 7:07CV00565, 2007 WL 4268915, at *1 (W.D. Va. Nov. 30, 2007); Fed. R. Evid. 201(b)(2) (permitting judicial notice of facts which "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.")). Accordingly, all citations to Operating Procedure § 866.1 will be to the version which took effect on December 1, 2010.

issue informally." (*Id.* § 866.1.V.A.2.) An inmate must file a formal grievance within thirty days from the date of the incident or occurrence, or the discovery of the incident or occurrence, except in instances beyond the offender's control. (*Id.* § 866.1.VI.A.1.)

### 1. Grievance Intake Procedure

Prior to review of the substance of a grievance, prison officials conduct an "intake" review of the grievance to ensure that it meets the published criteria for acceptance. (*Id.* § 866.1.VI.B.) A grievance that meets the criteria for acceptance is logged in on the day it is received, and a "*Grievance Receipt*" is issued to the inmate within two days. (*Id.* § 866.1.VI.B.2.) If the grievance does not meet the criteria for acceptance, prison officials complete the "*Intake*" section of the grievance and return the grievance to the inmate within two working days. (*Id.* § 866.1.VI.B.3.) If the inmate desires a review of the intake decision, he or she must send the grievance form to the Regional Ombudsman within five calendar days of receipt. (*Id.* § 866.1.VI.B.4.)

### 2. Grievance Appeals

Up to three levels of review for a regular grievance exist. (Operating Procedure § 866.1.VI.C.) The Facility Unit Head of the facility in which the offender is confined conducts the Level I review. (*Id.* § 866.1.V.C.1.) If the offender is dissatisfied with the determination at Level I, he may appeal the decision to Level II, a review handled by the Regional Director, the Health Services Director, or the Chief of Operations for Offender Management Services. (*Id.* § 866.1.VI.C.2.) The Level II response informs the offender whether he or she may pursue an appeal to Level III. (*Id.* § 866.1.VI.C.2.f.)

B.    **Claim Three**

  1.    **Shabazz's Grievance Submissions Prior to the Filing of this Action**

On March 18, 2010, Shabazz filed an "Informal Complaint" claiming a denial of "an opportunity to practice the dietary tenets of the Nation of Islam." (Shabazz Decl. Ex. B 6.) Shabazz further stated that he could not "receive a Nutritionally balanced diet consistent with 'How to eat to Live,' by the Honorable Elijah Muhammad by eating food from the regular menu" and that the Common Fare Diet[6] was unacceptable to followers of the NOI. (*Id.*) On March 24, 2010, GCC personnel responded that "[t]he Common Fare diet that is served was approved by the appropriate [department] in [Richmond]. At the present time, no changes will be made, although the menu could change in the future." (*Id.* (capitalization corrected).)

Shabazz filed a regular grievance on March 28, 2010 asserting that his "sacred dietary tenets, as prescribed by the Most Honorable Elijah Muhammad in 'How to Eat to Live,'" were not being met. (*Id.* at 8.) Shabazz further stated that the "Common Fare Diet does not afford me a reasonable opportunity to practice my Islamic dietary tenets." (*Id.*) GCC staff responded to the regular grievance on March 30, 2010 by completing the "*Intake*" section of the grievance. (*See* Grievance Procedure § 866.1.VI.B.3.) GCC staff checked the box next to the pre-printed

---

[6] Regarding the Common Fare Diet, Shabazz states that:

> The Common Fare Diet consists of peanut butter, dry cereal, soy bean, soy bean in white rice, white bread, raw vegetables, fish, fresh fruit, milk, peanut butter and jelly, jelly, cold vegetarian beans, and boiled egg. How To Eat To Live forbids members of the [NOI] to eat a diet consisting primarily of raw vegetables. Except for the egg, milk, and fresh fruit, this diet is forbidden by How To Eat To Live. Nevertheless, . . . Shabazz . . . take[s] this so-called Common Fare Diet because it is the least evil of all dietary evils at [GCC].

(Am. Comp. ¶ 16.)

7

phrase, "Insufficient Information" and handwrote the phrase, "Date of occurrence?" on the line provided. (Shabazz Decl. Ex. B 9.)

Rather than provide the date of the incident, on April 4, 2010, Shabazz appealed this intake decision to the Regional Ombudsman. (*Id.* at 2.) In this letter, Shabazz claimed that he provided the date of the incident in the body of the March 28, 2010 grievance. (*Id.* at 2, 4.) Shabazz then alleged that the Grievance Coordinator at GCC was "hindering [Shabazz] from proceeding with [his] right to grieve these issues." (*Id.* at 4.) Shabazz requested that the Regional Ombudsman refer the issue to Warden Hinkle at GCC. (*Id.*) The Regional Ombudsman upheld the decision of the GCC staff that Shabazz had not provided sufficient information in the March 28, 2010 grievance. (*Id.* at 9.) Nothing before the Court indicates that Shabazz ever provided GCC staff with a date of occurrence regarding the March 28, 2010 grievance.

### 2. Shabazz's Grievance Submissions After the Filing of the Present Action

Shabazz filed an informal complaint and regular grievance concerning the issues raised in Claim Three dated March 23, 2011 and April 19, 2011 respectively. (Shabazz Decl. Ex. G 3, 4.) Shabazz also submits a letter, dated May 2, 2011, in which he asks the Regional Ombudsman to review the intake decision concerning the April 19, 2011 grievance. (*Id.* at 2.)

### 3. Analysis

"Proper exhaustion of administrative remedy procedures for purposes of § 1997e(a) means using all steps that the agency holds out, and doing so properly, so that the agency addresses the issues on the merits." *Henderson v. Virginia*, No. 7:06cv00408, 2007 WL 2781722, at *19 (W.D. Va. Sept. 21, 2007) (*citing Woodford*, 548 U.S. at 90). A grievance returned for failure to provide sufficient information, and not thereafter re-submitted, is

8

unexhausted. *Id.* at \*20; *White v. Braxton*, No. 7:07–cv–00242, 2007 WL 4305642, at \*5–6

(W.D. Va. Dec. 7, 2007). Nothing before the Court indicates that Shabazz re-submitted the

March 28, 2010 grievance after it was returned to him marked "Insufficient Information." Nor

does any indication exist that Shabazz took further action regarding the substance of the March

28, 2010 grievance after GCC's intake decision was upheld by the Regional Ombudsman. Thus,

though Shabazz exhausted his administrative remedies regarding the intake decision, he failed to

exhaust his administrative remedies regarding the substance of the March 28, 2010 grievance.

*Joyner v. Combs*, No. 7:06–CV–00377, 2007 WL 152105, at \*3 (W.D. Va. Jan. 17, 2007) (*citing*

*Woodford*, 548 U.S. at 92); *see Sewell v. Ramsey*, No. CV406–159, 2007 WL 201269, at \*3

(S.D. Ga. Jan. 24, 2007) (holding that a grievance must include "'relevant information about [the

prisoner's] claims.'" (*quoting Brown v. Sikes*, 212 F.3d 1205, 1210 (11th Cir. 2000))); *see also*

*Brown*, 212 F.3d at 1209–10 ("[W]hat § 1997e(a) requires, and all that it requires, is that the

prisoner provide during the grievance process all of the information concerning his claims that he

has or reasonably could obtain.").

      Shabazz's grievances submitted after the filing of the present action also fail to exhaust

his administrative remedies. A plaintiff's administrative remedies must be completely exhausted

before initiating an action. 42 U.S.C. § 1997e(a); *Muhammad v. Martens*, 23 F. App'x 207, 209

(6th Cir. 2001) (*citing Brown v. Toombs*, 139 F.3d 1102, 1103–04 (6th Cir. 1998)); *Jackson v.*

*Dist. of Columbia*, 254 F.3d 262, 269 (D.C. Cir. 2001). Shabazz filed his original complaint on

September 9, 2010. (Docket No. 1.) Shabazz's filing of an Amended Complaint does not

change the date by which Shabazz had to exhaust his administrative remedies. *Jackson*, 254

F.3d at 269. Thus, Shabazz's attempt at exhaustion after filing suit does not satisfy the

exhaustion requirement.  Accordingly, Claim Three is not exhausted and will be DISMISSED WITHOUT PREJUDICE.

**C.      Claim Eight**

**1.      Shabazz's Exhaustion Efforts**

On September 24, 2010, Shabazz filed an informal complaint stating that he was compelled to eat his Ramadan meal alongside Moorish Science Temple of America members. (Shabazz Decl. Ex. D 4.)  On October 16, 2010, Shabazz filed a regular grievance making the same complaint.  (*Id.* at 2.)  Both of these documents post-date September 9, 2010, the date Shabazz filed his original complaint.  (Docket No. 1.)

**2.      Analysis**

Shabazz failed to file an informal grievance concerning the issue stated in Claim Eight until September 24, 2010.  (Shabazz Decl. Ex. D 4.)  Shabazz did not file his regular grievance on this issue until October 16, 2010.  (*Id.* at 2.)  As stated above, a plaintiff's administrative remedies must be completely exhausted before initiating an action and the filing of the Amended Complaint does not change the date by which Shabazz was required to exhaust his administrative remedies.  *Muhammad*, 23 F. App'x at 209; *Jackson*, 254 F.3d at 269.  Thus, Shabazz's attempts to exhaust Claim Eight after filing his original complaint do not satisfy the exhaustion requirement.  Accordingly, Claim Eight will be DISMISSED WITHOUT PREJUDICE.

**D.      Terminated Defendants**

Shabazz has no surviving claims against the following defendants:  Virginia Department of Corrections, Linda Shear, George M. Hinkle, C. Alderman, R. Parker, Mark Engelke, N. Pernell, R. Williams, M. Eley, Lieutenant Williams, W.D. Jennings, Benjamin A. Wright, John Does 1–5, Faith Review Committee, Cecil E. McFarland, Randy Myers, Chaplin Services of the

Churches of Virginia, Inc., Daniel W. Anderson, Ralph Abernathy, M. Burk, Lieutenant Bass, Property Control Officer Blackwell, and Greensville Correctional Center. Accordingly, these Defendants will be DISMISSED as parties to this action.

## IV. CLAIM ONE

Shabazz brings Claim One only against the following defendants: "Director of Corrections [Gene M.] Johnson, Deputy Director of Corrections [John M.] Jabe, Regional Director [A. David] Robinson, Associate Warden Wright, Associate Warden Holloway, [and] Property Control Sergeant Futrell." (Am. Compl. 8.) For the remainder of this Memorandum Opinion the term "Defendants" will refer only to these persons.

In April of 2010, Warden Hinkle issued a Memorandum requiring that prisoners purchase their non-music CDs exclusively from the distribution company Jones Express Music ("JEM").[7] (Am. Compl. Ex. C 2.) The JEM catalogue then began including a "list of approved religious CDs." (*Id.*) The list of approved CDs could be periodically updated "based on recommendations from the Faith Review Committee. Institutions may periodically make their own recommendations to the [Faith Review Committee] to add to the list of approved religious, non-music CDs." (*Id.*)

Shabazz asserts that:

> From January 6, 2010, until the present time, Defendants have repeatedly told members of the [NOI] [including Shabazz] that Defendants would establish a procedure whereby [NOI members] would be allowed to purchase and receive CD recordings of sermons by Mr. Muhammad and Minister Farrakhan through Defendant, Chaplain Anderson or from [JEM]. **Neither procedure has yet been established.** Although he recently began to sell Islamic CDs, [JEM] does not sell CDs of sermons by Mr. Muhammad or Minister Farrakhan. **Even if Jones did sell the same, [Shabazz] would still be religiously required to purchase the**

---

[7] The Court recently discussed this policy in *North v. Clarke*, No. 3:11–CV–211, Docket Nos. 37-38 (E.D. Va. filed Feb. 7, 2012).

11

**same from vendors owned and operated by the [NOI] under the Leadership
of Minister Farrakhan.**

(Am. Compl. ¶ 22 (internal citations omitted).)  Though he can recommend CDs of Elijah

Mohammad and Louis Farrakhan sermons to the Faith Review Committee for inclusion in the

JEM catalogue, Shabazz refuses to make any recommendations.[8]  Shabazz claims that the

"conditions and substantial burdens" involved in making a religious CD available through JEM

"do not apply to non-religious CDs." (*Id.* ¶ 21 (emphasis omitted).)  In his Declaration, Shabazz

states:

> Both the Faith Review Committee and [JEM] are infidels; therefore, I would
> **NEVER** make such a request [to have NOI CDs placed in the JEM catalogue] to
> either because each is anti-Farrakhan and the [NOI] based upon Defendants'
> personal, unfounded animus for Minister Farrakhan and for those of us who are
> truly with Him.  Moreover, I have a religious duty to financially support the
> [NOI] by making all of my authorized purchases from vendors own[ed] and
> operated by the [NOI] **whenever possible.**

(Shabazz Decl. ¶ 12 (spelling corrected).)

---

[8] The Court notes that, in his affidavit in support of Defendant's Motion for Summary
Judgment, Louis B. Cei, Special Program Manager for the Department of Corrections, refers to
an April 30, 2010 memorandum to the "Wardens and Superintendents" from Deputy Director
John Jabe. (Cei Aff. ¶ 4; Cei Aff. Enclosure A.)  This memorandum states that "[t]he list [from
JEM of approved CDs available for purchase] will be updated periodically based on
recommendations from the Faith Review Committee (FRC).  Institutions may periodically make
their own recommendations to the FRC to add to the list of approved . . . CDs." (Cei Aff.
Enclosure A ¶ 3.)  Shabazz has submitted a copy of the April 30, 2010 memorandum as an
attachment to his Amended Complaint, addressed to the "Offender Population" from Warden
Hinkle, containing the same paragraph referred to by Cei in his affidavit. (*Id.*; Am. Compl. Ex.
C ¶ 3.)  Nevertheless, Shabazz asserts that he did not know that he could make CD
recommendations to the Faith Review Committee until he "read this averment in Cei's
Affidavit." (Shabazz Decl. ¶ 12.)

12

Based on the foregoing, Shabazz claims that Defendants have violated his rights under the First[9] and Fourteenth[10] Amendments and RLUIPA[11]:

| Claim One (a) | By requiring religious, non-music CDs to be approved by the Faith Review Committee before being available for purchase but not applying this regulation to non-religious CDs, Defendants have violated Shabazz's Fourteenth Amendment right to equal protection of the laws. |

| Claim One (b) | By requiring Shabazz to petition the Faith Review Committee to add NOI religious, non-music CDs to the JEM catalogue, rather than allowing Shabazz to purchase these CDs outright from The Final Call, Inc., Defendants are violating Shabazz's First Amendment right to the free exercise of religion. |

| Claim One (c) | By requiring Shabazz to petition the Faith Review Committee to add NOI religious, non-music CDs to the JEM catalogue, rather than allowing Shabazz to purchase these CDs outright from The Final Call, Inc., Defendants are placing a substantial burden on Shabazz's exercise of his religion in violation of RLUIPA. |

(Am. Compl. ¶¶ 17–22.) Shabazz seeks a declaratory judgment "declaring that the acts and omissions of Defendants . . . violated, and continue to violate, [Shabazz's] rights under the First and Fourteenth Amendments to the United States Constitution and [RLUIPA]." (Am. Compl. 17.) Shabazz also seeks an injunction "requiring Defendants . . . to . . . establish a procedure[ ] whereby [Shabazz] may purchase and receive cassette tape and CD recordings by Minister Farrakhan and Elijah Muhammad from vendors owned and operated by the Nation of Islam

---

[9] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I.

[10] "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1.

[11] Religious Land Use and Institutionalized Persons Act ("RLUIPA") of 2000, 42 U.S.C. §§ 2000cc et seq.

13

under the Leadership of Louis Farrakhan," as well as $175,000 in compensatory damages and $175,000 in punitive damages from each Defendant. (*Id.* at 17, 18.) For the reasons that follow, the Court will order further briefing with respect to Claims One (a), One (b), and One (c).

### A.    Claim One (a)—Violation of Equal Protection

Shabazz claims that, by requiring the Faith Review Committee to approve religious, non-music CDs before making them available for purchase, but not applying this regulation to non-religious CDs, Defendants have violated Shabazz's Fourteenth Amendment right to equal protection of the laws. (Am. Compl. ¶ 21.) Defendants have failed to even acknowledge Shabazz's Fourteenth Amendment claim, much less address it. The record before the Court suggests that Defendants treat purchasers of non-music CDs differently from purchasers of music CDs. Additionally, it appears that Defendants treat purchasers of religious, non-music CDs differently than purchasers of non-religious, non-music CDs. Accordingly, Defendants will be DIRECTED to submit a memorandum, citing relevant authority, explaining their position on whether the CD purchase policy complies with the Equal Protection Clause of the Fourteenth Amendment.

### B.    Claim One (b)—Violation of Free Exercise

Shabazz claims that, by requiring him to petition the Faith Review Committee to add NOI religious, non-music CDs to the JEM catalogue, rather than allowing him to purchase these CDs outright from The Final Call, Inc., Defendants are violating Shabazz's First Amendment right to free exercise of religion.[12] (Am. Compl. ¶ 22; Shabazz Decl. ¶ 12.) The Supreme Court

---

[12] Defendants deny, as a matter of fact, that Shabazz is being denied access to religious, non-music CDs. (Mem. Supp. Mot. Summ. J. 7–8.) Shabazz disputes this fact, claiming that the very method by which Defendants propose he access these CDs places a substantial burden on his religious exercises and, thus, amounts to no access at all. (Shabazz Decl. ¶ 12.) Defendants

14

of the United States instructs that a prison's alleged violation of an inmate's right to free exercise

of religion should be evaluated using a four-factor test. *Turner v. Safley*, 482 U.S. 78, 89–92

(1987). Thus, this Court must determine: "(1) whether there is a 'valid, rational connection'

between the regulation" and the asserted government interest; (2) whether Shabazz was

> deprived of all forms of religious exercise or whether [he was] able to participate in other observances of [his] faith; (3) what impact the desired accommodation would have on security staff, inmates, and the allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to the challenged regulation.

*Lovelace v. Lee*, 472 F.3d 174, 200 (4th Cir. 2006) (*quoting Turner*, 482 U.S. at 89–92). "*Turner*

at a minimum requires a deferential examination of the prison's rationale for the restrictions

. . . ." *Id.* at 200 n.9; *Adkins v. Kaspar*, 393 F.3d 559, 564 (5th Cir. 2004) (stating that whether a

policy concerning religion "is rationally related to legitimate government objectives, [is] the first

and paramount inquiry under *Turner*." (internal quotation marks and footnote omitted)). Here,

though Defendants recite the *Turner* factors in their Memorandum in Support, Defendants have

offered no explanation for restricting religious, non-music CD purchases to one vendor. *See*

*Lovelace*, 472 F.3d at 200 n.9 (remanding grant of summary judgment where "the prison has yet

to come forward with any substantive rationale" for its policy). Neither have Defendants offered

any rationale as to Shabazz's concern that, were JEM to carry the NOI CDs he wishes to

purchase, he would not be able to purchase them from that vendor without compromising his

religious beliefs.[13]

---

have not addressed Shabazz's specific contention that the methodology by which Shabazz must obtain these CDs constitutes a substantial burden. Rather, Defendants jump straight into the *Turner* test. (Mem. Supp. Mot. Summ. J. 7.)

[13] Although Defendants assert entitlement to qualified immunity (Mem. Supp. Mot. Summ. J. 10–11), that assertion largely omits citation to relevant law. Contrary to Defendants'

Accordingly, Defendants will be DIRECTED to file a memorandum explaining their rational for the restrictions on CD purchases by inmates and, if Defendants so choose, describing their qualified immunity claim with particularity.

### 3.    Claim One (c)—Violation of RLUIPA

Shabazz claims that, by requiring him to petition the Faith Review Committee to add NOI religious, non-music CDs to the JEM catalogue, rather than allowing him to purchase these CDs outright from The Final Call, Inc., Defendants are placing a substantial burden on his exercise of his religion in violation of RLUIPA.  (Am. Compl. ¶ 22; Shabazz Decl. ¶ 12.) RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability." 42 U.S.C. § 2000cc–1(a).  When a prisoner "produces prima facie evidence to support a claim alleging a violation" of RLUIPA, "the burden of persuasion on any element of the claim" shifts to the government, "except that the [prisoner bears] the burden of persuasion on whether the [challenged regulation] substantially burdens the [prisoner's] exercise of religion." 42 U.S.C. § 2000cc–2(b).  The government must "demonstrate[ ] that imposition of the burden . . . (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc–1(a). Thus, to begin, Shabazz must demonstrate that the regulation imposed a "substantial burden" on

---

approach to briefing, "[a] defendant invoking qualified immunity must do more than mention its existence and demand dismissal of the suit." *Fisher v. Neale*, No. 3:10CV486–HEH, 2010 WL 3603495, at *3 (E.D. Va. Sept. 8, 2010).  The defendant must (1) identify the specific right allegedly violated "at the proper level of particularity," *Campbell v. Galloway*, 483 F.3d 258, 271 (4th Cir. 2007); (2) brief, with full supporting authority, why the right was not so clearly established as to put a reasonable official on notice of any legal obligations; and (3) describe with particularity the factual basis supporting the assertion that a reasonable official in the defendant's situation would have believed his conduct was lawful. *Fisher*, 2010 WL 3603495, at *3 (*citing Collinson v. Gott*, 895 F.2d 994, 998 (4th Cir. 1990)).

his religious exercise. In determining if Shabazz has met this standard, the Court must answer two questions: "(1) Is the burdened activity 'religious exercise,' and if so (2) is the burden 'substantial'?" *Adkins*, 393 F.3d at 567.

### a.    Religious Exercise

"RLUIPA broadly defines 'religious exercise' to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" *Lovelace*, 472 F.3d at 186 (*quoting* 42 U.S.C. § 2000cc–5(7)(A)). Shabazz's claim that his beliefs compel him to purchase CDs only from an approved NOI vendor qualifies, under "RLUIPA's generous definition," as a burden on Shabazz's religious exercise. *Adkins*, 393 F.3d at 568.

### b.    Substantial Burden

"[F]or RLUIPA purposes, a substantial burden on religious exercise occurs when a state . . . 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Lovelace*, 472 F.3d at 187 (third alteration in original) (*quoting Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981)). This might occur if the regulation requires an inmate to "'choose between following the precepts of [his or] her religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of her religion . . . on the other hand.'" *Id.* (second and third alterations in the original) (*quoting Sherbert v. Verner*, 374 U.S. 398, 404 (1963)).[14] "On the opposite end of the spectrum . . . a

---

[14] In weighing the substantial burden on a belief or practice, "courts must not judge the significance of the particular belief or practice in question." *Lovelace*, 472 F.3d at 187 n.2. This is because "RLUIPA 'bars inquiry into whether [the] belief or practice is central to a prisoner's religion.'" *Id.* (alteration in original) (*quoting Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005)). "Rather, courts should inquire into the sincerity of the professed religiosity." *Miles v. Moore*, No. 11–6466, 2011 WL 4957956, at *2 (4th Cir. Oct. 19, 2011) (*citing Lovelace*, 472 F.3d at 187 n.2). No evidence in the record suggests that Shabazz does not hold his religious beliefs sincerely.

17

government action or regulation does not rise to the level of a substantial burden on religious exercise if it merely prevents the adherent from either enjoying some benefit that is not otherwise generally available or acting in a way that is not otherwise generally allowed." *Adkins*, 393 F.3d at 570. Whether a substantial burden exists necessitates a "case-by-case, fact-specific inquiry." *Id.* at 571.

Shabazz asserts that audio recordings of sermons by Elijah Muhammad and Louis Farrakhan

> were designed to help those who study and practice [NOI teachings] to properly understand these teachings and to properly understand how to worship and serve Allah (God) in the Person of Master Fard Muhammad. These audio recordings are needed by [Shabazz] for [his] continued spiritual growth and development.
> . . . .
> **Even if [JEM] did sell [sermons by Muhammad and Farrakhan], [Shabazz] would still be religiously required to purchase the same from vendors owned and operated by the [NOI] under the Leadership of Minister Farrakhan.**

(Am. Compl. ¶¶ 18, 22.) Further, Shabazz states that "I have a religious duty to financially support the [NOI] by making all of my authorized purchases from vendors own[ed] and operated by the [NOI] **whenever possible.** Thus, I would never financially support the infidel [JEM] over The Final Call, Inc., or some other vendor owned and operated by the [NOI]." (Shabazz Decl. ¶ 12.)

Defendants assert that Shabazz fails to show that any substantial burden on his religious exercise exists. (Mem. Supp. Mot. Summ. J. 9.) Defendants, however, have failed to cite any useful authority to support this proposition. Defendants cite *Abdulhaseeb v. Calbone*, 600 F.3d 1301 (10th Cir. 2010), for the proposition that "[n]ot every infringement on a religious exercise will constitute a substantial burden." (Mem. Supp. Mot. Summ. J. 9.) However, this case does not concern the denial of religious materials needed for spiritual growth. Rather, the

18

*Abdulhaseeb* Court held that the denial of halal foods to a Muslim prisoner was a substantial burden on his religious exercise. *Abdulhaseeb*, 600 F.3d at 1316–17.  Defendants next cite *Smith v. Allen*, 502 F.3d 1255 (11th Cir. 2007), and *Sossamon v. Texas*, 560 F.3d 316 (5th Cir. 2009), for the proposition that, to state a claim under RLUIPA, "the government's denial of a particular religious activity [must be] more than an inconvenience to one's religious practice." (Mem. Supp. Mot. Summ. J. 9.)  However, *Sossamon* concerned whether individual prisoners in cell restriction could be denied the opportunity to attend religious services under RLUIPA. *Sossamon*, 560 F.3d at 321.  *Smith*, also relied upon by Defendants, concerned a question of whether an inmate could possess certain items of paraphernalia connected to his unique religious practice. *Smith*, 502 F.3d at 1262.[15]  Thus, Defendants have pointed to no relevant authority concerning the denial of religious materials needed for spiritual growth. *See, e.g., Jones v. Shabazz*, 352 F. App'x 910 (5th Cir. 2009); *Garrison v. Banks*, No. 5:02 CV 00005 JWC, 2005 WL 2234635 (E.D. Ark. Sept. 13, 2005).

If the CD purchase policy substantially burdens Shabazz's religious exercise, the burden shifts to Defendants to "demonstrate[ ] that imposition of the burden . . . (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc–1(a).  Defendants have made no effort to demonstrate that they have a compelling interest in requiring prisoners to purchase religious, non-music CDs from JEM to the exclusion of all other vendors.  Accordingly, Defendants will be DIRECTED to submit a memorandum, citing relevant authority, explaining their position on whether the CD purchase policy places a substantial burden on Shabazz's religious exercise and,

---

[15] *Smith's* ultimate holding, that RLUIPA allows for monetary damages against state officials acting in their official capacity, was abrogated by the Supreme Court in *Sossamon v. Texas*, 131 S. Ct. 1651, 1663 (2011).

if so, whether the policy furthers a compelling government interest and is the least restrictive means of furthering that interest.

### c.   Claims for Money Damages

The United States Court of Appeals for the Fourth Circuit has concluded that, because RLUIPA does not waive the Eleventh Amendment immunity of the States, it "does not authorize claims for money damages against an official who is sued in [his or] her official capacity." *Rendelman v. Rouse*, 569 F.3d 182, 187 (4th Cir. 2009) (*citing Madison v. Virginia*, 474 F.3d 118, 131 (4th Cir. 2006)). Accordingly, Shabazz's claims for money damages against Defendants in their official capacities will be DISMISSED.

Though the Fourth Circuit has stated that, as an exercise of congressional spending power, "RLUIPA cannot authorize damage actions against private individuals," *id.* at 187, "RLUIPA also purports to have an independent commerce clause basis." *Id.* at 189 (*citing* 42 U.S.C. § 2000cc–1(b)). The question of whether RLUIPA, "analyzed under the commerce clause, would authorize individual capacity damage actions" remains unsettled in the Fourth Circuit. *Id.* Shabazz has advanced facts suggesting that the prison regulation affects interstate commerce; thus, his claims for monetary damages against Defendants in their individual capacities survives summary judgment at this juncture.

### V. CONCLUSION

Shabazz's Motion to Withdraw (Docket No. 89) will be GRANTED. Claims Two, Three, Four, Five, Six, Seven, and Eight will be DISMISSED WITHOUT PREJUDICE. The following Defendants will be DISMISSED as parties to this action: Virginia Department of Corrections, Linda Shear, George M. Hinkle, C. Alderman, R. Parker, Mark Engelke, N. Pernell, R. Williams, M. Eley, Lieutenant Williams, W.D. Jennings, Benjamin A. Wright, John Does 1–

5, Faith Review Committee, Cecil E. McFarland, Randy Myers, Chaplin Services of the Churches of Virginia, Inc., Daniel W. Anderson, Ralph Abernathy, M. Burk, Lieutenant Bass, Property Control Officer Blackwell, and Greensville Correctional Center. Shabazz's claims for money damages against the remaining Defendants in their official capacities will be DISMISSED. Defendant's motion for summary judgment (Docket No. 59) will be GRANTED IN PART. In light of Shabazz's "DECLARATION UNDER PENALTY OF PERJURY," the Court will HOLD IN ABEYANCE Defendants' Motion for Summary Judgment on Claims One (a), (b), and (c). The remaining Defendants will be DIRECTED to file a memorandum regarding Claims One (a), (b), and (c) within thirty (30) days of entry hereof. Shabazz is ADVISED that he may respond to Defendants submissions within fifteen (15) days of their receipt by him.

An appropriate Order will accompany this Memorandum Opinion.

/s/
James R. Spencer
United States District Judge

Date: 2-13-12
Richmond, Virginia