IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



MUWAKKIL S.B. SHABAZZ, *et al.*,

Plaintiffs,

v.                                                             Civil Action No. 3:10CV638

VIRGINIA DEPARTMENT OF CORRECTIONS, *et al.*,

Defendants.

## MEMORANDUM OPINION

Muwakkil S.B. Shabazz, a Virginia inmate and a member of the Nation of Islam ("NOI"), brings this 42 U.S.C. § 1983[1] action. Shabazz proceeds *pro se* and *in forma pauperis*. The action commenced with six plaintiffs and multiple claims for relief. In two prior opinions, the Court dismissed all claims other than Claims 1(a)–(c) and dismissed all plaintiffs except for Shabazz.[2] *See Shabazz v. Va. Dep't Corr.*, No. 3:10CV638, 2012 WL 463562, at *10 (E.D. Va. Feb. 13, 2012); *Shabazz v. Va. Dep't Corr.*, No. 3:10CV638, 2011 WL 4025264, at *5–6 (E.D.

---

[1] That statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] The action currently proceeds on the Amended Complaint. (ECF No. 49.) In his Amended Complaint Shabazz named as separate defendants, Benjamin A. Wright, Chairman of the Publication Review Committee and Associate Warden Wright. (Am. Compl. 1.) These defendants are the same person. (Defs.' Mot. Summ. J. (ECF No. 59) 1 n.1.) The Court has dismissed all claims where Shabazz identified the defendant as Benjamin A. Wright.

Va. Sept. 9, 2011). The Court ordered further briefing with respect to Claims 1(a)–(c).[3]

*Shabazz*, 2012 WL 463562, at *10. Defendants complied with that directive. (Supp'l Mem. Law (ECF No. 94).)

Claims 1(a)–(c) concern the Virginia Department of Corrections' ("VDOC") policies with respect to inmate compact disk ("CD") purchases. These policies include the limitation that inmates must purchase all CDs through a single vendor, Jones Express Music ("JEM"). Specifically, Shabazz asserts:

| | |
|---|---|
| Claim 1(a) | Defendants violate Shabazz's Fourteenth Amendment[4] right to Equal Protection by applying additional restrictions to inmate purchasing of religious, non-music CDs. The Faith Review Committee must approve religious, non-music CDs for purchase. Defendants, however, fail to require Faith Review Committee approval for the purchase of non-religious CDs. |
| Claim 1(b) | Defendants violate Shabazz's First Amendment[5] right to free exercise of religion by requiring Shabazz to petition the Faith Review Committee to add NOI religious, non-music CDs to the JEM catalogue, rather than allowing Shabazz to purchase these CDs directly from The Final Call, Inc. |
| Claim 1(c) | Defendants place a substantial burden on Shabazz's religious exercise in violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"),[6] by forcing him to petition the Faith Review Committee to add NOI religious, non-music CDs to the JEM catalogue, rather than allowing Shabazz to purchase these CDs directly from The Final Call, Inc. |

---

[3] The following individuals remain as defendants: Deputy Director of Operations Jabe; Regional Director Robinson; Associate Warden Wright; Associate Warden Holloway; and Property Control Sergeant Futrell (hereinafter "Defendants").

[4] "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

[5] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I.

[6] Religious Land Use and Institutionalized Persons Act ("RLUIPA") of 2000, 42 U.S.C. §§ 2000cc *et seq.*

2

(*See* Am. Compl. ¶¶ 17–22.) For the reasons set for below, the Court will GRANT Defendants' Motion for Summary Judgment with respect to all three remaining claims.

## I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (citing *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "'[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the

3

*onus* of proof is imposed.'" *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

### A. The Parties' Submissions

As pertinent here, in support of their Motion for Summary Judgment, Defendants rely upon: (1) an affidavit of Louis B. Cei, Special Programs Manager for the VDOC (Defs.' Mem. Supp. (ECF No. 60) Attach. 3 ("Cei Aff.")); (2) a supplemental affidavit from Cei (Defs.' Supp'l Mem. (ECF No. 94) Attach. 1 ("Cei Supp'l Aff.")); and, (3) a copy of a Memorandum pertaining to religious, non-music CDs dated April 30, 2010. (*Id.* Encl. A ("April 30, 2010 Memorandum").) Shabazz submits: (1) his own declaration (ECF No. 73 ("Shabazz Decl.")); (2) his supplemental declaration (Pl.'s Br. Opp'n (ECF No. 99) Attach. 1 ("Shabazz Supp'l Decl.")); (3) a sworn supplemental declaration of Jonathan Lee X Smith (Pl.'s Br. Opp'n Attach. 5 ("X Supp'l Decl.")); and, (4) several documents prepared by VDOC personnel.[7] Additionally, Shabazz swore under penalty of perjury to the truth of his statements in his Amended Complaint and his Brief in Opposition to the Motion for Summary Judgment.

---

[7] For example, Shabazz has submitted the "**Approved Vendor List**" for Greensville Correctional Center ("GCC"), and a March 15, 2012 Memorandum and January 12, 2012 Memorandum for Warden Wright. (Shabazz Supp'l Decl. Ex. A, B, C.) Citations to Shabazz's submissions will refer to paragraph number in the submission or the page numbers given to these documents by the Court's CM/ECF docketing system.

### B. Shabazz's Challenges

Of course, the facts offered by affidavit or sworn declaration must also be in the form of admissible evidence. *See* Fed. R. Civ. P. 56(c)(4). In this regard, the statement in the affidavit or sworn declaration "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Id.* Therefore, "summary judgment affidavits cannot be conclusory or based upon hearsay." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (internal citations omitted).

Shabazz contends that portions of Cei's original and supplemental affidavits fail "to conform with the requirements of [former] Rule 56(e)[8] because" Cei failed to attach authenticated copies of the documents Cei refers to in his affidavits and that Cei's statements constitute inadmissible hearsay. (Pl's Obj. & Supp'l Mot. to Strike (ECF No. 101) 2–3.) With respect to Cei's original affidavit, Shabazz challenges Cei's statements about the April 30, 2010 Memorandum.[9] (*Id.* (citing ¶ 4 Cei's Aff).) Shabazz acknowledges that Cei attached a copy of the April 30, 2010 Memorandum from Deputy Director Jabe to his affidavit. (*Id.* at 2.) Shabazz, however, asserts that the April 30, 2010 Memorandum is "unauthenticated." (*Id.* at 2–3.) "To

---

[8] "If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit." Fed. R. Civ. P. 56(e)(1) (2009). The 2010 amendments to Rule 56 eliminated the unequivocal requirement that a document referred to in affidavit must be attached to the affidavit. *See Foreword Magazine, Inc. v. OverDrive, Inc.*, No. 1:10–cv–1144, 2011 WL 5169384, at *2 (W.D. Mich. Oct. 31, 2011). "The requirement that a sworn or certified copy of a paper referred to in an affidavit or declaration be attached to the affidavit or declaration [was] omitted as unnecessary given the requirement in [new] subdivision (c)(1)(A) that a statement or dispute of fact be supported by materials in the record." Fed. R. Civ. P. 56 advisory committee's note (2010 amendments).

[9] The Court only resolves Shabazz's objections to Cei's statements that are pertinent to the Court's resolution of the Motion for Summary Judgment.

authenticate an exhibit, a party 'need only prove a rational basis for that party's claim that the document is what it is asserted to be,' which may 'be done with circumstantial evidence.'" *Kaplan v. Mayo Clinic*, 653 F.3d 720, 725–26 (8th Cir. 2011) (quoting *Jones v. Nat'l Am. Univ.*, 608 F.3d 1039, 1045 (8th Cir. 2010)). Given this low threshold, Cei's testimony identifying the April 30, 2010 Memorandum is sufficient to authenticate that document. *Id.*

With respect to Cei's Supplemental Affidavit, Shabazz objects to a number of statements Cei makes with respect to the VDOC's policies regarding CDs because Cei failed to attach documents setting forth those policies. (Pl.'s Objs. & Supp'l Mot. Strike 2–3.) Because the pertinent statements in paragraphs 4, 7, and 8 of Cei's Supplemental Affidavit "are based on [Cei's] personal knowledge of the [VDOC's] procedures, not [his] interpretation of the language" in a memo, he need not attach the pertinent memo or documents setting forth those procedures. *Birmingham v. Experian Info. Solutions, Inc.*, 633 F.3d 1006, 1011 n.1 (10th Cir. 2011) ("'[T]estimony otherwise admissible need not be stricken simply because it contains evidence that also appears in written documents that are not attached to the affidavit.'" (quoting 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2722 (3d ed. 1998))).[10] Furthermore, given his position as Chair of the Faith Review Committee, which approves CDs for sale by JEM to VDOC offenders, Cei has personal knowledge that "[s]everal NOI sermons from The Final Call, Inc. are currently available through JEM for purchase by offenders." (Cei Supp'l Aff. ¶ 10.) Accordingly, Shabazz's Objections and Supplemental Motion to Strike (ECF No. 101) will be DENIED.

---

[10] Shabazz fails to demonstrate Cei lacks personal knowledge with respect to the other relevant statements in his affidavits. For example, Cei is "Chair of the Publication Review Committee and the Faith Review Committee." (Cei Supp'l Aff. ¶ 1.) Thus, Cei has personal knowledge of the fact that both these committees "appl[y] the same standard of review before any CD can enter a VDOC facility." (*Id.* ¶ 7.)

In light of foregoing submissions and principles, the following facts are established with respect to the Motion for Summary Judgment. The Court omits those facts favoring Defendants that Shabazz disputes.

## II. SUMMARY OF PERTINENT FACTS

Shabazz is confined in the GCC. (Shabazz Decl. ¶ 2.) Shabazz is a member of the NOI. (Shabazz Supp'l Decl. ¶ 2.) Shabazz "believe[s] in and practice[s] the religion of Islam as taught by Elijah Muhammad through His Representative, Minister Farrakhan." (Am. Compl. ¶ 2.) Prior to 2009, the VDOC allowed Shabazz and other NOI members to obtain audio recordings of sermons by Elijah Muhammad and Minister Farrakhan from The Final Call, Inc.[11] (*Id.* ¶ 18.) According to Shabazz, "[t]hese audio recordings are needed" for his "spiritual growth and development" and he has "no other means of accessing complete sermons by Elijah and Minister Farrakhan." (*Id.* (emphasis omitted).)

In 2009, Defendants stopped allowing Shabazz and other inmates to obtain audio recordings from The Final Call, Inc. (*Id.* ¶ 19.) This decision apparently flowed from an August 11, 2009 decision by Director Jabe that "non-music CDs would no longer be permitted for purchase/possession by offenders." (Cei Supp'l Aff. ¶ 4.) Nevertheless, Shabazz later received notice that inmates "would be allowed to retain possession of all cassette tapes [they] had acquired prior to the decision to ban cassette tapes." (Am. Compl. ¶ 19.)

On April 30, 2010, Deputy Director Jabe issued a Memorandum permitting prisoners to purchase religious, non-music CDs. (April 30, 2010 Mem. 1.) The Memorandum, however, provided that inmates could only purchase such religious, non-music CDs from the distribution

---

[11] The NOI owns and operates The Final Call, Inc. (Am. Compl. ¶¶ 18, 22.)

company JEM. (*Id.*) According to that Memorandum, the JEM catalogue would include a "list of approved religious CDs." (*Id.*) The list of approved CDs would be periodically updated "based on recommendations from the Faith Review Committee.... Institutions may periodically make their own recommendations to the [Faith Review Committee] to add to the list of approved religious, non-music CDs." (*Id.*) The Memorandum further states, "All CDs (music and non-music) can only be about one (1) hour in length." (*Id.* at 2.)

The VDOC currently employs three different committees to review all publications, including CDs, prior to permitting a publication into a VDOC facility. (Cei Supp'l Aff. ¶ 6.) Since April 30, 2010, the Faith Review Committee reviews religious CDs for approval. (*Id.* ¶¶ 5–7.) The Music Management Committee reviews for approval non-religious, music CDs. (*Id.* ¶ 7.) As of March 13, 2012, "the Publication Review Committee is now responsible for the review and approval of all non-religious, non-music CDs." (Cei Supp'l Aff. ¶ 7.) According to Cei, "[a]lthough separate committees exist for the review of religious and non-religious CDs, each committee applies the same standard of review before any CD can enter a VDOC facility." (*Id.* ¶ 7.)

Shabazz has made no request to add "Louis Farrakhan's sermons that are distributed by The Final Call, Inc." to the approved list of CDs. (Cei Aff. ¶ 5.) Nevertheless, "[s]everal NOI sermons from The Final Call, Inc. are currently available through JEM for purchase by [VDOC] offenders." (Cei Supp'l Aff. ¶ 10.)[12]

---

[12] Johnathan Lee X swears that "JEM is **not** authorized by the [NOI] to sell CDs of sermons by Minister Farrakhan." (X Supp'l Decl. ¶ 7.) X, however, fails to provide any facts indicating that he has personal knowledge as to who the NOI authorizes to sell or resell sermons. *See* Fed. R. Civ. P. 56(c)(4).

8

Shabazz swears that he cannot purchase CDs through JEM because he has "a religious duty to financially support the [NOI] by making all of my authorized purchases from vendors own[ed] and operated by the [NOI] **whenever possible**." (Shabazz Decl. ¶ 12.)[13] Shabazz further explains: "By whenever possible, I simply mean that I am religiously obligated to financially support The [NOI] by purchasing these items, especially sermons by Minister Louis Farrakhan, from [NOI approved] vendors, if the item is available for sale at these stores." (Shabazz Supp'l Decl. ¶ 5.) According to Shabazz,

> it is both essential and central to [his] religious exercise as a Muslim follower of Minister Farrakhan to actually **possess** and carefully study the guidance recorded [on the CDs of Minister Farrakhan's sermons] and to **purchase** these CDs from The Final Call, Inc., or some other vendor under the leadership of Minister Farrakhan. These are **NOT** matters of choice: **they are mandated by my muslim 12 Point Code by the Most Honorable Elijah Muhammad, Point 10 and 11** in The Message To the Blackman In America by the most Honorable Elijah Muhammad and other Islamic laws.

(*Id.* ¶ 6.)

---

[13] Shabazz further swears that for him to utilize the Defendants' procedures for obtaining religious CDs interferes with his religious liberties because:

> Both the Faith Review Committee and [JEM] are infidels; therefore, I would **NEVER** make such a request [to have NOI CDs placed in the JEM catalogue] to either because each is anti-Farrakhan and the [NOI] based upon Defendants' personal, unfounded animus for Minister Farrakhan and for those of us who are truly with Him.

(Shabazz Decl. ¶ 12 (spelling corrected).) Conclusory comments of this ilk fail to create material disputes of fact. *See United States v. Roane*, 378 F.3d 382, 400–01 (4th Cir. 2004) (observing that "[a]iry generalities" and "conclusory assertions" cannot "stave off summary judgment") (alteration in original) (internal quotation marks omitted). Shabazz provides no factual support for the conclusion that JEM and the Faith Review Committee bear ill-will to the NOI or Minister Farrakhan. More to the point, Shabazz fails to coherently articulate why it violates his religious tenets as a member of the NOI to utilize either the Faith Review Committee or JEM. *See Krieger v. Brown*, No. 10-7576, 2012 WL 5447889, at *4 (4th Cir. Nov. 8, 2012) (concluding inmate's "blanket assertion" that "the sacred items were 'necessary' to perform 'well-established rituals'" insufficient to demonstrate denial of said items amounted to a substantial burden).

9

Cei swears the following facts justify the VDOC's use of a single vendor for CDs:

> CDs present challenges to the VDOC because the content can be altered or supplemented without the changes being readily observable (short of listening to the entire disc). By using a single vendor, the VDOC decreases the chances of contraband entering the prisons and CDs being pirated or tampered with, for example, discs being switched or information being recorded over the existing content. By using one vendor the VDOC is only required to approve a particular CD once and then it is added to the approved list for purchase for any offender to order. Also a single vendor makes the process more uniform and standardized which in turn is easier to monitor for security purposes. JEM is under a contractual obligation to assure that the proper CDs are being provided and that contraband is not coming into the facilities.

(Cei Supp'l Aff. ¶ 8.)

Defendants, however, fail to employ a single vendor policy for publications other than CDs. (Shabazz Decl. ¶ 13; Shabazz Supp'l Decl. Ex. A 1.) The Final Call Inc. is an authorized vendor for GCC for publications other than CDs. (Shabazz Supp'l Decl. Ex. A 1.) "Defendants authorize [Shabazz] to purchase publications [and] subscriptions to The Final Call newspaper, which carr[ies] a portion of [Minister Farrakhan's] sermons in every issue and, other religious and non-religious items from The Final Call, Inc. . . . ." (Shabazz Decl. ¶ 13 (emphasis omitted).) Additionally, Defendants allow the NOI Study Group at GCC "to use its savings to purchase DVDs from The Final Call, Inc., which is one of the approved [v]endors" for GCC. (Shabazz Supp'l Decl. ¶ 9.)

### III. EQUAL PROTECTION

In Claim 1(a) Shabazz asserts that, as of the filing date of the Amended Complaint, Defendants imposed "conditions and burdens" on his purchase of religious CDs that Defendants did not impose upon purchasers of non-religious CDs in violation of Shabazz's Fourteenth Amendment right to equal protection of the laws. (Am. Compl. ¶ 21 (emphasis omitted).)

Shabazz suggests that the Faith Review Committee's approval process is unique to religious CDs. (*Id.*)

"The [Equal Protection] Clause requires that similarly-situated individuals be treated alike." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (citing *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)). "In order to make out a claim under the Equal Protection Clause, a plaintiff must demonstrate that he has been treated differently from others similarly situated and that the unequal treatment was the result of intentional discrimination." *North v. Clarke*, No. 3:11–CV–211, 2011 WL 3321482, at *6 (E.D. Va. Aug. 2, 2011) (citing *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001)). Here, unlike the *North* plaintiff, Shabazz alleges disparate treatment from those inmates seeking to purchase non-religious music CDs.[14]

Shabazz does not dispute that the Music Management Committee or the Publication Review Committee must review all non-religious CDs prior to their inclusion in the JEM catalogue. Neither does Shabazz offer any evidence that the Music Management Committee or the Publication Review Committee apply a different standard of review to non-religious CDs than the Faith Review Committee applies to religious CDs.

Shabazz fails to demonstrate that Defendants treat him, a petitioner for VDOC's approval of religious CDs, differently from a petitioner for VDOC's approval of a particular non-religious

---

[14] The *North* plaintiff, a potential purchaser of non-religious, non-music CDs, challenged the portion of VDOC's policy completely banning this type of CD. *North v. Clarke*, No. 3:11–CV–211, 2012 WL 405162, at *1 (E.D. Va. Feb. 7, 2012). In *North*, this Court held that VDOC, by enforcing such a ban while allowing religious, non-music CDs, violated the *North* plaintiff's right to equal protection under the Fourteenth Amendment. *Id.* at *9. Though Shabazz also challenges VDOC's CD purchase policy, Shabazz does not challenge the aspect of the policy this Court found unconstitutional in *North*. Rather, Shabazz alleges that religious CDs, both music and non-music, are reviewed differently than non-religious music CDs.

CD. All CDs must be approved by the pertinent committee. Shabazz fails to demonstrate that the three committees employ different criteria to evaluate different requests. Shabazz adduces no evidence that VDOC would allow potential purchasers of non-religious CDs to purchase CDs from the vendor of their choice, rather than requiring these potential purchasers to buy their non-religious CDs from JEM. Thus, Shabazz fails to demonstrate, as he must, that VDOC treats him differently from other similarly situated inmates.[15] Accordingly, Claim 1(a) will be DISMISSED.

## IV. RLUIPA AND FREE EXERCISE CLAIMS

### A. RLUIPA

RLUIPA provides, in pertinent part, that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person—
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1(a). Thus, to begin, Shabazz must demonstrate that Defendants' policies impose a "substantial burden" on his religious exercise. In determining if Shabazz has met this standard, the Court must answer two questions: "(1) Is the burdened activity 'religious exercise,' and if so (2) is the burden 'substantial'?" *Adkins v. Kaspar*, 393 F.3d 559, 567 (5th Cir. 2004); *see Couch v. Jabe*, 679 F.3d 197, 200–01 (4th Cir. 2012) (employing similar two-part inquiry).

---

[15] Shabazz argues that, by excluding all CD's exceeding over an hour, Defendant subject him to "disparate treatment" because the sermons he wishes to purchase "are **normally** 2½ hours in length." (Pl.'s Br. Opp'n 4.) The evidence reflects that "[a]ll CDs (music and non-music) can only be about one (1) hour in length." (April 30, 2010 Mem. 2.) Thus, this fact fails to support the equal protection claim alleged in the Amended Complaint, which concerns disparate treatment between religious and non-religious CDs.

12

### B. Whether the Burdened Activities Are a Religious Exercise

"RLUIPA defines the term 'religious exercise' broadly to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" *Couch*, 679 F.3d at 200 (quoting 42 U.S.C. § 2000cc–5(7)(A)). Shabazz's claim implicates two distinct activities: (1) studying the sermons of Minister Farrakhan and Elijah Muhammad[16] and (2) financially supporting the NOI by purchasing recordings of these sermons from a NOI approved vendor. Shabazz swears that his faith motivates him to conduct both these activities. (Am. Compl. ¶ 18; Shabazz Decl. ¶ 12.) Given RLUIPA's broad definition of religious exercise and Defendants' failure to specifically challenge this portion of the substantial burden inquiry, the Court assumes both of these activities constitute religious exercise. *See Whitehouse v. Johnson*, No. 1:10cv1175 (CMH/JFA), 2011 WL 5843622, at *3 (E.D. Va. Nov. 18, 2011) (assuming inmate's enrollment in seminary course constituted religious exercise for purposes of RLUIPA).

### C. Whether Shabazz Demonstrates a Substantial Burden on His Religious Exercise

RLUIPA fails to define the term substantial burden. *See Couch*, 679 F.3d at 200. The United States Court of Appeals for the Fourth Circuit determined that the Supreme Court's jurisprudence interpreting the Free Exercise Clause provides guidance on the issue. *See Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006). Thus, the Fourth Circuit has explained that a substantial burden

> is one that put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs, or one that forces a person to choose between following the

---

[16] Shabazz insists that he must study sermons of Minister Farrakhan and Elijah Muhammad. (Shabazz Supp'l Decl. ¶ 6.) Shabazz, however, fails to articulate any religious significance to the medium utilized to the study the sermons.

13

precepts of h[is] religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of h[is] religion . . . on the other hand.

*Couch*, 679 F.3d at 200 (alterations and omission in original) (quoting *Lovelace*, 472 F.3d at 187). In conducting the substantial burden inquiry, the plaintiff "is not required . . . to prove that the exercise at issue is required by or essential to his [or her] religion." *Krieger v. Brown*, No. 10–7576, 2012 WL 5447889, at *3 (4th Cir. Nov. 8, 2012) (citing *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005)). Nevertheless, "at a minimum the substantial burden test requires that a RLUIPA plaintiff demonstrate that the government's denial of a particular religious . . . observance was more than an inconvenience to one's religious practice." *Smith v. Allen*, 502 F.3d 1255, 1278 (11th Cir. 2007) (citing *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004));[17] *see Krieger*, 2012 WL 5447889, at *4–5 (affirming grant of summary judgment where inmate failed to "show that the deprivation of an outdoor worship circle and the requested sacred items modified his behavior and violated his religious beliefs" (citing *Lovelace*, 472 F.3d at 187)). Thus, no substantial burden occurs if the government action merely makes the "religious exercise more expensive or difficult," but fails to pressure the adherent to violate his or her religious beliefs or abandon one of the precepts of his religion. *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 739 (6th Cir. 2007).

Two recent cases from the Fourth Circuit illustrate a plaintiff's responsibility with respect to demonstrating a substantial burden. In *Couch*, the plaintiff "testified that the primary religious texts of Islam command that he grow a beard and that the refusal to maintain a beard is a sin

---

[17] In *Sossamon v. Texas*, 131 S. Ct. 1651, 1663 (2011), the Supreme Court abrogated *Smith*'s ultimate holding that RLUIPA allows for monetary damages against state officials acting in their official capacity.

comparable in severity to eating pork." *Couch*, 679 F.3d at 200. The VDOC's grooming policy prohibited inmates from growing beards and enforced this rule by placing a noncompliant inmate in a program that "restricted or limited [the inmate's] access to personal property, movement rights, the right to eat and associate with others, recreation time, and visitation time." *Id.* at 199. The Fourth Circuit concluded that VDOC's grooming policy and enforcement mechanism, "fit squarely within the accepted definition of 'substantial burden'" because it placed substantial pressure on the plaintiff to modify his behavior and violate his beliefs. *Id.* at 200–01 (citing *Warsoldier v. Woodford*, 418 F.3d 989, 995–96 (9th Cir. 2005)).

In *Krieger*, the Fourth Circuit declined to find an inmate had demonstrated a substantial burden where prison officials denied "his requests for an 'outdoor worship circle' and a certain 'sacred items' related to his religious practice of Asatru." *Krieger*, 2012 WL 5447889, at *1. The plaintiff "asserted that deprivation of the outdoor worship circle would require him to pray indoors, and that the 'Blot' ceremony is '*best* performed outdoors.'" *Id.* at *3 (emphasis added). The Fourth Circuit concluded that the mere denial of the optimal manner for performing the "Blot" ceremony could not demonstrate a substantial burden where the plaintiff "failed to offer any explanation regarding the reason why indoor worship would compromise his religious beliefs." *Id.* Similarly, the inmate failed to demonstrate a substantial burden with respect to the denial of additional sacred items simply by the "blanket assertion" that "the sacred items were 'necessary' to perform 'well-established rituals.'" *Id.* at *4. The Fourth Circuit noted that plaintiff "did not identify those rituals, or explain why the absence of the sacred items had an impact on the rituals and violated his beliefs." *Id.*

*Krieger* illuminates another consideration in conducting the substantial burden inquiry. The availability to an inmate, in the most general sense, of other means to practice his or her faith is not relevant to the RLUIPA substantial burden inquiry. *Al–Amin v. Shear*, 325 F. App'x 190, 193 (4th Cir. 2009). Nevertheless, courts properly consider whether the inmate retains other means for engaging in the particular religious activity, such as the "Blot" ceremony, in assessing whether a denial of the inmate's preferred method for engaging that religious exercise imposes a substantial burden. *See Krieger*, 2012 WL 5447889, at *4; *Coleman v. Governor of Mich.*, 413 F. App'x 866, 875–76 (6th Cir. 2011). Thus, an inmate failed to demonstrate the denial of additional group study time imposed a substantial burden upon his religious exercise where prison officials already provided three hours of group study and worship time and allowed inmate to study in his cell. *See Van Wyhe v. Reisch*, 581 F.3d 639, 656–57 (8th Cir. 2009). Similarly, the United State Court of Appeals for the Sixth Circuit concluded that prison policies which limited the inmates' access to religious radio and television broadcasts failed to substantially burden the inmates' religious exercise because the inmates "may receive religious literature via the mail and may receive visitors at the prison to discuss their religious beliefs." *Coleman*, 413 F. App'x at 876. As explained below, in light of the foregoing principles, Shabazz fails to demonstrate any substantial burden upon his religious exercise.

### 1. Studying the Sermons of Elijah Muhammad and Minister Farrakhan

Shabazz fails to demonstrate a substantial burden on his religious exercise simply because Defendants' single vendor policy hampers one method for him to study the sermons of Elijah Muhammad and Minister Farrakhan. "RLUIPA does not require the prison to permit an inmate to possess [or obtain] every tangential item of property that could aid the inmate's

religious exercise or learning." *Van Wyhe*, 581 F.3d at 657. Shabazz remains free to purchase The Final Call newspaper which carries a portion of Minister Farrakhan's sermons "in every issue." (Shabazz Decl. ¶ 13.)[18] Additionally, Shabazz and the other NOI inmates at GCC retain possession of all cassette tapes with sermons from Minister Farrakhan or Elijah Muhammad that they possessed prior to the VDOC's 2009 ban on cassette tapes. (Am. Compl. ¶ 19.) Furthermore, Shabazz acknowledges that Defendants continue to allow the NOI Study Group at GCC to "use its savings to purchase DVDs from The Final Call, Inc." (Shabazz Supp'l Decl. ¶ 9.)

Given the ample opportunities Shabazz retains to study the sermons of Elijah Muhammad and Minister Farrakhan, Shabazz fails to demonstrate Defendants' single vendor policy substantially pressures him "'to modify his behavior and to violate his beliefs.'" *Couch*, 679 F.3d at 200 (quoting *Lovelace*, 472 F.3d at 187)); *see Coleman*, 413 F. App'x at 875–76. At best, the record indicates Defendants' single vendor policy hampers Shabazz's study of the required sermons in his preferred manner.[19] Such a showing fails to establish a substantial burden. *See Krieger*, 2012 WL 5447889, at *3–4; *Van Wyhe*, 581 F.3d 656–57 (concluding that denying an inmate a tape player in his cell to study Hebrew failed to constitute a substantial burden on the inmate's religious exercise); *Living Water Church of God*, 258 F. App'x at 739.

---

[18] Shabazz also remains free to purchase other publications from The Final Call, Inc., which may include additional sermons from Minister Farrakhan. (Shabazz Decl. ¶ 13.)

[19] Shabazz swears that only through the purchase of new CDs can he "access[ ] complete sermons by Elijah and Minister Farrakhan." (Am. Compl. ¶ 18.) Shabazz, however, fails to articulate, as he must, why study of the sermons available to him at GCC is so inadequate as to violate or compromise his beliefs. *See Krieger*, 2012 WL 5447889, at *3–4; *Whitehouse*, 2011 WL 5843622, at *4 (dismissing similar RLUIPA challenge to VDOC's single vendor policy where inmate failed to articulate how the policy substantially pressured him to "'modify his behavior' or to 'violate his beliefs'" (quoting *Lovelace*, 472 F.3d at 187)).

## 2. Financially Supporting the NOI

Shabazz swears that he has "a religious duty to financially support the [NOI] by making all of my authorized purchases from vendors own[ed] and operated by the [NOI] **whenever possible.**" (Shabazz Decl. ¶ 12.) No evidence exists, however, that Defendants preclude Shabazz from sending money directly to the NOI. Furthermore, because The Final Call, Inc. is an approved vendor for GCC, numerous opportunities exist for Shabazz to support The Final Call, Inc. and the NOI with his purchase of goods other than CDs. *Cf. Van Wyhe*, 581 F.3d at 656–57 (concluding inmate failed to establish a substantial burden of his religious exercise by prison officials' refusal to provide additional group study time beyond the three hours already allotted). While Defendants' single vendor policy may make it more expensive for Shabazz to support the NOI, the policy fails to substantially pressure Shabazz to violate or abandon one of the precepts of his religion. *Living Water Church of God*, 258 F. App'x at 739. Shabazz remains free to support the NOI and study the sermons of Minister Farrakhan and Elijah Muhammad. Thus, he fails to demonstrate a substantial burden on his religious exercise.

Because Shabazz fails to demonstrate that Defendants have substantially burdened his religious exercise, Claim 1(c) will be DISMISSED.

### D. Free Exercise

Similar to RLUIPA, in order for Shabazz to survive summary judgment for his First Amendment claim, Shabazz must demonstrate Defendants' conduct substantially burdens his religious exercise.[20] *Whitehouse*, 2011 WL 5843622, at *5. "RLUIPA provides considerably

---

[20] Defendants assert entitlement to qualified immunity with respect to Claim 1(b). (Defs' Supp'l Mem. Law 10–11 (as paginated by the Court's CM/ECF docket system).) Because the

more protection for an inmate's religious exercise than does the Free Exercise Clause of the Constitution of the United States." *Id.* at *5 (citing *Lovelace*, 472 F.3d at 186). Thus, "[w]here an inmate has not put forth sufficient evidence under RLUIPA to demonstrate a substantial burden on his religious exercise, his claim fails under the Free Exercise Clause of the First Amendment as well." *Van Wyhe*, 581 F.3d at 657–58 (citing *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008)). Accordingly, Claim 1(b) will be dismissed.

## V. CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment (ECF No. 59) is GRANTED. Claims 1(a)–(c) and the action will be DISMISSED. Shabazz submitted a "MOTION FOR LEAVE TO FILE ATTACHED OBJECTION" (ECF No. 103) wherein he protests the Court's February 13, 2012 Memorandum Opinion and the decision to allow Defendants to further brief the issues remaining before the Court. Shabazz fails to demonstrate any error by the Court in its prior decisions or any abuse of discretion in directing Defendants to submit further briefing on the remaining claims. Accordingly, Shabazz's motion (ECF No. 103) will be DENIED.

An appropriate Final Order shall accompany this Memorandum Opinion.

Date: 3-15-13
Richmond, Virginia

/s/
James R. Spencer
United States District Judge

---

Court concludes that Shabazz fails to establish a violation of his rights under the First Amendment, the Court need not address qualified immunity. *See Long v. Beres*, 3:10CV532, 2013 WL 139342, at *5 n.14 (E.D. Va. Jan. 10, 2013) (citations omitted).